UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YINGLING,<br><br>Defendant. | Case No. 17-cr-00388-SI-1<br><br>**ORDER RE GOVERNMENT'S MOTION FOR FORFEITURE OF BOND AND JUDGMENT AGAINST DEFENDANT; MOTION FOR ENFORCEMENT OF SURETY'S OBLIGATIONS**<br><br>Re: Dkt. No. 55 |

On September 24, 2018, the United States filed a motion for forfeiture of bond and judgment against defendant Donnie Yingling and motion for enforcement against Jeanette Yingling, defendant's mother and surety. Dkt. No. 55. Defendant and Ms. Yingling oppose the government's motion and urge the Court to remit the bond in whole or in part. Dkt. Nos. 82, 83. After considering the parties' materials and arguments the Court orders: (1) with respect to Ms. Yingling, the bond is forfeited, but forfeiture is set aside pursuant to Federal Rule of Criminal Procedure 46(F)(2); (2) with respect to defendant, the bond is also forfeited; however, the Court is not entering judgment, declines to rule on remission at this time, and invites the government to petition the court for entry of judgment when defendant nears the end of his sentence.

## BACKGROUND

On July 21, 2017, Mr. Yingling was indicted on various firearm and narcotics charges. Dkt. No. 1. Mr. Yingling was arrested on these charges and made his initial appearance before Magistrate Judge Elizabeth D. Laporte on August 16, 2017 where he was remanded to custody. Dkt. No. 7. Mr. Yingling suffers from years of drug and alcohol addiction. Dkt. No. 83-1 at 2.

After Mr. Yingling's initial appearance, his mother, Ms. Yingling, met with Mr. Yingling's attorney, Jodi Linker, to discuss signing a bond for Mr. Yingling's release. Dkt. No 83-1 at 2-3. Ms. Yingling then met with Pretrial Services who informed her the bond would be $100,000. *Id.* at 3. Ms. Yingling informed Pretrial Services that she had no assets and lived off her social security benefits[1] and returned home to Rosamond, CA without signing the bond. *Id.*

After returning home, Ms. Yingling received a call from Mr. Yingling, in jail, who expressed his desire to receive rehabilitation treatment. *Id.* Ms. Linker called Ms. Yingling on August 31, 2017 and again asked her to sign a bond with a condition of the release requiring Mr. Yingling check-in to an in-patient rehabilitation center in Sacramento, CA. *Id.*; Dkt. No. 15. Ms. Yingling then went to the United States District Court in Bakersfield, CA where she agreed to be a surety and signed the bond documents for Mr. Yingling's release. Dkt. No. 83-1 at 4; Dkt. No. 15. Ms. Yingling did not have a lawyer present when she signed the bond documents and did not have money to retain a lawyer to advise her on the content of the bond documents. Dkt. No. 83-1 at 4.

On August 31, 2017, Ms. Yingling drove through the night from Rosamond, California to reach Oakland in time for Mr. Yingling's 8:00 a.m. release from the Glenn Dyer jail on September 1, 2017 to personally escort him to the treatment center in Sacramento. *Id.* Upon arriving at the Glenn Dyer jail, Ms. Yingling learned the jail personnel mistakenly sent Mr. Yingling on a bus to the San Francisco Federal Courthouse. *Id.* Ms. Yingling waited at Glenn Dyer for hours until Mr. Yingling was released into her custody. *Id.* Upon his release, Mr. Yingling learned the jail personnel left all his personal belongings in San Francisco. *Id.* at 5. Ms. Yingling and her son were then forced to drive to San Francisco to retrieve Mr. Yingling's belongings before departing for the treatment center in Sacramento. *Id.*

When the Yinglings arrived at the treatment center they learned intake was closed and that Mr. Yingling could not be processed until the next business day, which was Tuesday, September 5, 2017 (Monday September 4, 2017 was a holiday). *Id.* at 5. Ms. Yingling purchased hotel rooms at

---

[1] Jeanette Yingling is 72 years-old. She does not own a home, she resides in government-subsidized senior housing. Her sole income is $1,180 in the form of monthly Social Security benefits. Furthermore, she is a cancer survivor who cannot work due to her age and past medical conditions. Dkt. No. 83-1 at 2.

2

the Best Western near Sacramento for the two of them for the long-weekend until Mr. Yingling could enter rehab. *Id.*; Dkt. No. 66-8 at 1. According to Ms. Yingling, during this time, Mr. Yingling was suffering from withdrawals and did not seem well.[2] Dkt. No. 83-1 at 5.

On Tuesday, September 5, 2017, Ms. Yingling accompanied Mr. Yingling when he checked into the treatment center. *Id*. Shortly thereafter, Mr. Yingling fled the treatment center. Dkt. No. 66-8 at 3. After checking Mr. Yingling into rehab, Ms. Yingling phoned the treatment center "a few days later" to check in with her son and learned he had absconded. Dkt. No. 83 at 5. Ms. Yingling called the phone numbers she had for Mr. Yingling but the numbers were disconnected. Dkt. No. 83-1 at 6. Law enforcement never contacted Ms. Yingling concerning Mr. Yingling's departure from the rehabilitation facility or his whereabouts. *Id.* Nor did law enforcement enlist Ms. Yingling's help to locate Mr. Yingling. *Id.*

On September 22, 2017, Mr. Yingling failed to appear for a status conference. *See* Dkt. No. 18. He remained a fugitive until November 28, 2017 when Potter County, Texas sheriff's deputies stopped Mr. Yingling on Interstate 40 where the sheriff's deputies uncovered approximately 34 pounds of marijuana and a loaded sawed-off shotgun. Dkt. No. 55 at 13-41. Mr. Yingling was subsequently sent back to the Northern District of California for sentencing.

On August 23, 2018, in the Northern District of California, Mr. Yingling pled guilty to three counts: Conspiracy to Deal in Firearms without a License in violation of 18 U.S.C. § 371; Dealing in Firearms without a License, in violation of 18 U.S.C. § 922(a)(1)(A); and Distribution and Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). Dkt. No. 53. On September 24, 2018, this Court sentenced Mr. Yingling to 84 months imprisonment. Dkt. No. 78.

The government now moves for forfeiture of the $100,000 bond against Mr. and Ms. Yingling. Dkt. No. 55.

---

[2] Mr. Yingling states he received detox treatment while in custody at the Glenn Dyer jail until his release on September 1, 2017. Dkt. No. 82 at 2. Presumably, this treatment ended when he was released. On September 5, 2017 Mr. Yingling was finally admitted into the rehabilitation center. However, the rehabilitation center could not provide Mr. Yingling with detox treatment until September 20, 2017. Dkt. No. 66-8 at 1.

3

## LEGAL STANDARD

The government moves for forfeiture of the bond, and Mr. and Ms. Yingling request that the forfeiture be set aside and remitted respectively. "The court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). "The forfeiture is thus mandatory." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002).

The Court may, however, "set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). The decision whether to set aside or remit a forfeiture rests within the sound discretion of the Court. *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982).

In considering whether to exercise that discretion, the Ninth Circuit directs courts to examine the following non-exclusive list of factors: "1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend; and 6) the appropriateness of the amount of the bond." *Nguyen*, 279 F.3d at 1115-16. Courts in this district have considered additional factors, including: 7) "whether actions by the government, unknown to the surety, increased the risk that the defendant would violate the terms and conditions of his release," and 8) "whether the surety assisted, played any role in, or was in some measure responsible for the conduct by the defendant that breached the release conditions." *See United States v. Famiglietti*, 548 F. Supp. 2d 398, 405 (S.D. Tex. 2008) (applying Ninth Circuit law); *United States v. Villalobos*, No. CR 00-40242, 2005 U.S. Dist. LEXIS 46440, 2005 WL 6127290, at *2 (N.D. Cal. Feb. 17, 2005) (Brazil, M.J.). "[T]he relative weight the courts may ascribe to the acknowledged factors can vary from case to case and . . . in some circumstances one or two factors might play a determinative role, even if all the other factors seemingly point toward a different outcome." *Famiglietti*, 548 F. Supp. 2d at 406. The Court is also guided by the overriding purposes of the Bail Reform Act: ensuring the defendant's appearance in court and observance of the release conditions. *United States v. Vaccaro*, 51 F.3d 189, 192-93 (9th Cir. 1995).

**DISCUSSION**

Here, neither party disputes that defendant breached conditions of the bond through his initial failures to appear at all proceedings, refrain from committing any federal, state, or local crimes, not travel outside the Northern and Eastern Districts of California, not possess any firearm, destructive device, or other dangerous weapon, participate in drug and alcohol counseling, and submit to drug and alcohol testing, and not possess any narcotic or controlled substance without a legal prescription. The Court finds the bond is forfeit. However, the Court will exercise its discretion and, using the factors listed above, assess whether enforcing the bond is appropriate.

### A. Surety Jeanette Yingling

The record makes clear that Ms. Yingling earnestly desired her son to attend rehab and indeed feared for his life if he did not do so. Dkt. No. 83-1 at 3. Ms. Yingling expended great effort, energy, and expense to meet her son when he was released from jail, drive him to Sacramento, pay for a hotel over a long weekend, and personally escort him to the treatment center. Thus, with regards to the first factor, defendant unquestionably breached multiple release conditions but did so at absolutely no fault of Ms. Yingling.

With respect to the second factor, Ms. Yingling did everything she could to apprehend Mr. Yingling once he fled the rehabilitation facility. Upon learning Mr. Yingling left the treatment center, she called all the numbers she had for Mr. Yingling but they were disconnected. Law enforcement did not seek Ms. Yingling's assistance to locate Mr. Yingling and, indeed, despite her best efforts, she had no assistance to provide. The government claims Ms. Yingling "did not monitor defendant and further did not incentivize defendant to comply with his release conditions." Dkt. No. 55 at 6. Ms. Yingling spent days driving to pick up her son, deliver him to the rehabilitation facility, monitored him over a weekend before intake could process him, all to ensure Mr. Yingling complied with his release conditions and get the help he desperately needed. The government's argument is without merit.

Regarding the third factor, the government argues Mr. Yingling inconvenienced the government by delaying his prosecution for approximately five months. Again, this is no fault of Ms. Yingling.

The fourth factor considers the presence of mitigating facts. The government argues there are none. Dkt. No. 55 at 4. However, by mishandling Mr. Yingling's release from prison, the government contributed to his delay in reaching the rehabilitation facility. This delay proved to be significant – causing Mr. Yingling to wait until the end of a holiday weekend to check-in to the facility. Furthermore, once Mr. Yingling was finally admitted, the rehabilitation facility's detox unit was full. *See* Dkt. No. 66-8 at 1. After two days of not receiving treatment, Mr. Yingling maintains that he "left in a panic" after realizing he would not receive detox treatment. Dkt. No. 82 at 2. The government argues Judge Laporte did not order detox treatment, rather Judge Laporte ordered drug treatment "as directed by Pretrial Services" and any failure to arrange detox treatment was the sole responsibility of Pretrial Services, not the government. Dkt. No. 84 at 3. This is a distinction without a difference. Sending Mr. Yingling to a facility that could not provide detox treatment is a mitigating factor the Court will consider.

Regarding the fifth factor, Ms. Yingling is Mr. Yingling's mother, not a professional bail bondsman. This factor "bears no weight against the suret[y]." *Famiglietti*, 548 F. Supp. 2d at 414.

The sixth and seventh factors are not relevant here.

Finally, the eighth factor favors Ms. Yingling. The record does not indicate Ms. Yingling in any way contributed or was responsible for Mr. Yingling breaching his release conditions. In fact, the record indicates quite the opposite – she did everything in her power to help her son comply with the release conditions.

The balance of equities support setting aside the bond in full with respect to Ms. Yingling.

### B.  Defendant Donnie Yingling

Only the following factors are relevant when assessing remission of the bond with respect to Mr. Yingling: (1) the willfulness of the breach of release conditions; (2) the cost, inconvenience, and prejudice to the government; and (3) mitigating factors. *Nguyen*, 279 F.3d at 1115-16.

**Willfulness**: As discussed above, Mr. Yingling willfully breached the conditions of his release, causing the first factor to weigh in favor of enforcing the bond against him.

**Cost/Inconvenience/Prejudice to Government**: The government claims it expended time and resources to locate Mr. Yingling and transport him back to the Northern District of California. Dkt. No. 55 at 6-7. Additionally, the government claims Mr. Yingling's flight delayed the government's prosecution of this case for approximately five months while Mr. Yingling remained a fugitive. *Id.* The government has "no obligation to furnish a bill of costs" as it relates to its expenses in locating, retrieving, and prosecuting Mr. Yingling. *Nguyen*, 279 F.3d at 1117. And while the Court finds Mr. Yingling's breach cost the government time and money, it seems $100,000 may be disproportionate to the inconvenience.

**Mitigating Factors**: The mitigating factors discussed above are relevant to the Court's analysis here. Namely: (1) Mr. Yingling mistakenly being taken to San Francisco instead of being released in Oakland initially; (2) Mr. Yingling's belongings mistakenly being left in San Francisco; (3) the delay caused by (1) and (2) resulting in Mr. Yingling not being able to check into the rehabilitation program for three days; and (4) the unavailability of detox treatment at the rehabilitation center.

While the Court recognizes the mitigating factors' impact on Mr. Yingling's ability to comply with his release conditions, the Court is gravely concerned by Mr. Yingling's actions, which definitely weigh against remission. However, exercising its wide discretion, the Court will defer ruling at this time. In *United States v. Logan*, the court exercised its discretion to remit the past accrued interest and waive future interest of the bond, in part, because the bond obligations created significant economic hardships for the defendant and his family. No. 95-cr-1468-IEG, 2009 U.S. Dist. LEXIS 48178, at *3 (S.D. Cal. June 5, 2009). Given Mr. Yingling's situation, imposing a $100,000 bond obligation could amount to a debilitating economic hardship when he is released and attempts to reenter society. Due to these considerations, the Court invites the government to renew its motion for judgment when Mr. Yingling nears the end of his sentence so the Court may better assess what justice requires pursuant to Rule 46(f)(2).

## CONCLUSION

Based on Federal Rule of Criminal Procedure 46(f)(2), the forfeiture is set aside as to the surety, Ms. Yingling. The Court finds that the bond is forfeit with respect to Mr. Yingling, but refrains from entering judgment at this time. The Court requests the government to petition the Court for entry of judgment upon Mr. Yingling's completion of his sentence.

**IT IS SO ORDERED**.

Dated: March 1, 2019

_____
SUSAN ILLSTON
United States District Judge